**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **ROBERT L. BURKEY, III,** | | |
| | * | |
| **Plaintiff,** | | |
| **v.** | * | **Case No.: GJH-20-2006** |
| | | |
| **BALTIMORE COUNTY,** *et al.*, | | |
| | * | |
| **Defendants.** | | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

While incarcerated at the Baltimore County Detention Center ("BCDC") in Towson,

Maryland, self-represented Plaintiff Robert L. Burkey, III filed this 42 U.S.C. § 1983 action

against Defendants Baltimore County and BCDC (collectively, "County Defendants"), and

PrimeCare Medical Inc. ("PrimeCare").[1] ECF No. 1. The Complaint, which Burkey

supplemented several times, alleges that he was subjected to unconstitutional conditions of

confinement at BCDC, correctional and medical staff were deliberately indifferent to his medical

needs, and PrimeCare staff violated the Health Insurance Portability and Accountability Act

("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996). ECF Nos. 1, 5, 6, 8 & 15. Pending

before the Court is County Defendants' Motion to Dismiss, or, in the Alternative, Motion for

Summary Judgment, ECF No. 17, and Defendant PrimeCare's Motion to Dismiss, ECF No. 19.[2]

---

[1] Plaintiff later supplemented the Complaint to add Aramark Food as a defendant. ECF No. 6. Because there is
nothing in the docket to indicate that Defendant Aramark Foods has been properly served, the Court will issue an
order to show cause within fourteen (14) days of the Court's Order why the Complaint should not be dismissed as to
Aramark pursuant to Fed. R. Civ. P. 4(m).

[2] Plaintiff also filed correspondence seeking the appointment of counsel to represent him in this matter. ECF No. 29.
Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person" proceeding *in
forma pauperis* who is "unable to afford counsel."  In civil actions, however, courts appoint counsel only in

No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, County Defendants' Motion is granted, in part, and denied, in part, and PrimeCare's Motion is granted.

## I.      BACKGROUND[3]

### A. Plaintiff's Allegations

In his unverified Complaint and its supplements, Plaintiff alleges that, at approximately 4:30 pm on April 14, 2020, he was confined to his cell when several surrounding cells began to overflow with sewage. ECF No. 1 at 2.[4] After correctional staff were made aware of the issue, they shut off running water to all toilets, including Plaintiff's, but they did not properly clean the unit. *Id.* at 3; *see also* ECF No. 8 at 3. From April 14 through April 18, Plaintiff was forced to remain in his cell with standing waste in the toilet and mold growing on the floors, walls, and bunks. ECF No. 1 at 3; ECF No. 5 at 4; *see also* ECF No. 8 at 3. According to Plaintiff, the sewage and mold problems have continued intermittently since. *See* ECF No. 8 at 3; ECF No. 5 at 4. Additionally, Plaintiff alleges he was not provided a meal or medication on April 14, ECF No. 1 at 2–3, and that from April 14 through at least April 20, "all medical sick calls were ignored completely . . . no matter how urgent." ECF No. 5 at 2. Plaintiff also alleges that since April 14, he has not been provided his daily hour of exercise. ECF No. 1 at 3.

---

exceptional circumstances. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). Courts consider "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989). Here, because Plaintiff has stated a colorable claim, the case will proceed to discovery. Since Plaintiff remains incarcerated, he would be unable to conduct discovery without the assistance of counsel. Accordingly, Plaintiff's request, understood as a motion to appoint counsel, will be granted.

[3] Unless stated otherwise, all facts are taken from Plaintiff's Amended Complaint or documents attached to and relied upon in the Amended Complaint and are accepted as true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Plaintiff next raises allegations concerning the food provided to inmates. First, Plaintiff alleges that since March 2020, correctional staff have not served hot meals twice a day. ECF No. 1 at 3. Second, Plaintiff alleges that, on July 8, 2020, he received a bagged lunch that had been chewed by a rodent. ECF No. 5 at 3–4; ECF No. 6 at 2, 5. Plaintiff further alleges that he has received spoiled milk and meat as well as moldy bread on other occasions. ECF No. 1 at 3; ECF No. 5 at 4; ECF No. 6 at 5. According to Plaintiff, eating the spoiled and rodent-infested food has caused vomiting, acid reflux, and other lasting stomach problems. ECF No. 6 at 3, 5.

Plaintiff further alleges that the correctional staff have failed to follow protocols aimed at the prevention of the spread of COVID-19—specifically, the staff have not practiced social distancing, have not worn masks or have lowered the mask when speaking to Plaintiff, and did not replace their gloves after each use. ECF No. 1 at 3; ECF No. 5 at 4. Plaintiff's requests for face masks and COVID-19 tests were also denied. ECF No. 5 at 4.

Finally, Plaintiff alleges various problems with his medical care. He alleges first that he has been denied tuberculosis tests. ECF No. 1 at 3. He further alleges that he has improperly been given his medication in crushed-up form, *id.* at 4; EF No. 5 at 3, and was not given medication at all on July 16, 2020, and "several other afternoon[s]," ECF No. 5 at 5. Plaintiff alleges that medical staff members have discussed his physical and mental health issues in front of other inmates and correctional staff, violating his privacy and subjecting him to verbal abuse by other inmates. ECF No. 1 at 4; ECF No. 5 at 3. And, in his final supplement to the Complaint, Plaintiff alleges that an X-ray on October 9, 2020, revealed a fracture in his right leg below his knee. ECF No. 15 at 3. Plaintiff alleges that he had pain in his legs since August 2020, but the staff deliberately did not diagnose or treat him, instead transferring him from a bottom bunk to a

top bunk with no ladder to "inflict more pain" on Plaintiff. *Id.* Plaintiff alleges that they did so in retaliation for his filing this lawsuit. *Id.*

According to Plaintiff, he sought to file complaints regarding the above allegations, but correctional staff refused to provide him forms. ECF No. 5 at 4. When he was able to file grievances, they were either rejected or did not receive responses. ECF No. 1 at 2; ECF No. 5 at 2, 4. Plaintiff states that he was unable to appeal the grievances because the original forms disappeared—he believes they were likely destroyed. ECF No. 8 at 2; ECF No. 15 at 2.

**B. County Defendants' Response**

According to County Defendants, on April 9, 2020, Administrative Captain Daniel Swain issued an email stating that, effective immediately, all staff and inmate workers were required to use surgical masks. ECF No. 17-11 at 2. Then, on April 13, 2020, Captain Swain issued a second email stating that a modified lockdown would begin at midnight. ECF No. 17-5 at 2. The lockdown meant that "only one dorm at a time [were] permitted in the dayroom for exercise time on a rotating basis." *Id.* An emergency food menu was issued, and a dietician for Aramark Correctional Serviced, LLC, found that it met nutritional guidelines. 17-6; ECF No. 17-8. The emergency menu initially featured breakfast and lunch meals served cold due to limited staffing. ECF No. 17-7.

County Defendants assert that, on April 14, 2020, the inmate population in housing unit 3H refused their meal bags. ECF No. 17-9 ¶ 7. Additionally, a "large number" of those inmates flooded their housing section. *Id.* ¶¶ 9–10. The following day, April 15, 2020, Building Operations unclogged toilets, removed trash, and cleaned water from the floor. *Id.* ¶¶ 10–11. According to an affidavit by BCDC Gang Intelligence Sergeant Ryan McDowell, who reviewed video footage of housing unit 3H from the relevant time frame, Sergeant McDowell "observed

building operations staff [] removing uniforms, sheets, blankets, mattress material and copious amounts [of] trash from said toilets and pipes." *Id.* ¶ 11. However, McDowell noted that mop buckets did not enter the unit as scheduled on April 14, April 15, or April 16, 2020. *Id.* at 6. With regard to April 16, McDowell states, "no documentation was discovered supporting any reason for cleaning supplies not to be distributed." *Id.*

Defendants also point to a log showing Plaintiff was provided an hour of exercise time on April 16, 2020. ECF No. 17-10. Additionally, according to an email sent on April 16, 2020, the emergency menu was to change to include a hot lunch meal on April 18, 2020. ECF No. 17-7.

Finally, regarding Plaintiff's medical care, Defendants state that "the modified lockdown also affected inmates' ability to move to the medical facilities." ECF No. 17-2 at 4; ECF No. 17-12 ¶¶ 3–4. Nevertheless, medical staff spoke to inmates in "a secure corridor where staff or inmates cannot overhear," *id.* ¶ 4, and Plaintiff received mental health treatment in a "Medical Treatment area where he telecommunicates with a psychiatrist," *id.* ¶ 6. Defendants also state that, as a default, medical protocol requires staff to crush all psychotropic medication unless it cannot be crushed. *Id.* ¶ 10.

### C. Procedural History

Plaintiff filed suit on July 8, 2020. ECF No. 1. Plaintiff then supplemented the Complaint on July 20, 2020, ECF No. 5, July 29, 2020, ECF No. 6, August 10, ECF No. 8, and October 15, 2020, ECF No. 15. Although Plaintiff was required to move for leave to amend the Complaint after the initial supplement on July 20, 2020, *see* Fed. R. Civ. P. 15(a), because Defendants had not yet filed their responsive motions, and because Plaintiff is proceeding *pro se*, the Court will consider Plaintiff's supplemental pleadings here. However, any further amendments must be accompanied by a motion for leave.

5

County Defendants filed a Motion to Dismiss or for Summary Judgment on November 2, 2020. ECF No. 17. Defendant PrimeCare filed a Motion to Dismiss on November 5, 2020. ECF No. 19. Plaintiff opposed both motions. ECF Nos. 24 & 30. Defendants did not file replies.

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of the claims pled in a complaint." *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019). To overcome a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of the plaintiff's claims, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in original) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Accordingly, in ruling on a motion brought under Rule 12(b)(6), a court "separat[es] the legal conclusions from the factual allegations, assum[es] the truth of only the factual allegations, and then determin[es] whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012) (quoting *Iqbal*, 556 U.S. at 1949–50).

*Pro se* complaints must be construed liberally and must be "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Dismissal of a pro se complaint for failure to state a valid claim is therefore only appropriate when, after applying this liberal construction, it appears '*beyond doubt* that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief.'" *Spencer v. Earley*, 278 F. App'x 254, 259–60 (4th Cir. 2008) (emphasis in original) (quoting *Haines v. Kerner*, 404 U.S. 519, 521 (1972)). However, despite this liberal construction requirement, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beauciett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Courts are not required to "conjure up questions never squarely presented to them" nor "construct full blown claims from sentence fragments." *Id.*

County Defendants' Motion is styled as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 17. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss or for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact" without distinguishing pre- or post-discovery).

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23.

A material fact is one "that might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248–49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). The Court may rely on only facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

While the Court may rule on a motion for summary judgment prior to commencement of discovery, *see, e.g.*, *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 286 (2d Cir.

2000), Federal Rule of Civil Procedure 56(d) "mandates that summary judgment be denied when the nonmovant has not had the opportunity to discover information that is essential to his opposition." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (internal citation and quotation marks omitted). To obtain Rule 56(d) relief, the non-moving party bears the burden of showing how discovery "could possibly create a genuine issue of material fact sufficient . . . to survive summary judgment, or otherwise affect the court's analysis." *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015) (internal citation and quotation marks omitted).

Here, because the Court considers evidence submitted by the parties, County Defendants' motion will be reviewed as a Motion for Summary Judgment.

## III. DISCUSSION

### A. BCDC

As a preliminary matter, BCDC is not a "person" subject to suit under 42 U.S.C. § 1983. Section 1983 states: "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis supplied). Courts have consistently dismissed claims brought against correctional facilities themselves on the basis that they are not people and cannot be held liable under § 1983. *See, e.g.*, *Petrovia v. Prime Care Med. Inc.*, No. CV RDB-20-2522, 2021 WL 307414, at *2 (D. Md. Jan. 29, 2021) (finding BCDC is not a person subject to suit under § 1983); *Clark v. Montgomery Cty. Corr. Facility*, No. CV ELH-20-1194, 2020 WL 7129324, at *4 (D. Md. Dec. 4, 2020) (holding Montgomery County Correctional Facility not a person). For those reasons, Plaintiff's claims against BCDC are dismissed.

**B.  Conditions of Confinement Claims**

At all relevant times, Plaintiff was a detainee at BCDC. "Civil detainees who challenge the conditions of their confinement are protected by the Due Process Clauses of the Fifth and Fourteenth Amendments." *Coreas v. Bounds*, 451 F. Supp. 3d 407, 420 (D. Md. 2020) (citing *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982)); *see also Gattuso v. C.C.S. Med. Dep.*, No. CV TDC-18-3470, 2020 WL 488954, at *3 (D. Md. Jan. 29, 2020). These protections are at least as robust as those of the Eighth Amendment because "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional to confine the involuntarily committed—who may not be punished at all—in unsafe conditions." *Youngberg*, 457 U.S. at 315–16; *see also Bell v. Wolfish*, 441 U.S. 520, 545 (1979) (holding that pretrial detainees "retain at least those constitutional rights that we have held are enjoyed by convicted prisoners"). Protections for individuals confined by the state, whether civilly or criminally, include the right to reasonable safety and adequate medical care. *See Youngberg*, 457 U.S. at 315–16; *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (holding that prison officials are constitutionally required to maintain "humane conditions of confinement," including "the provision of adequate medical care" and taking "reasonable measures to guarantee the safety of the inmates").

In *Hill v. Nicodemus*, the Fourth Circuit held that the Eighth Amendment deliberate indifference standard applies to Fourteenth Amendment claims by pretrial detainees of inadequate medical treatment. 979 F.2d 987, 991–92 (4th Cir. 1992) ("[P]rison officials violate detainee's rights to due process when they are deliberately indifferent to serious medical needs." (quoting *Gordon v. Kidd*, 971 F.2d 1087 (4th Cir. 1992)). The same standard applies to conditions of confinement claims. *See Seth v. McDonough*, 461 F. Supp. 3d 242, 259 (D. Md. 2020) ("Importantly '[w]hether one characterizes the treatment received by [the prisoner] as

inhuman conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the deliberate indifference standard.'" (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). Under that standard, plaintiffs must allege objective and subjective components—(1) that the alleged deprivation is "objectively, sufficiently serious" and (2) that the prison official acted with a "sufficiently culpable state of mind." *Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) (citations and internal quotation marks omitted).

Under the objective prong, plaintiffs must demonstrate that the alleged deprivation was "'extreme'—meaning that it poses a 'serious or significant physical or emotional injury resulting from the challenged conditions,' or 'a substantial risk of serious harm resulting from . . . exposure to the challenged conditions.'" *Porter v. Clarke*, 923 F.3d 348, 355 (4th Cir. 2019) (quoting *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016)).

To demonstrate the subjective component, plaintiffs must show deliberate indifference, meaning "the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Porter*, 923 F.3d at 361 (quoting *Scinto*, 841 F.3d at 225). "Deliberate indifference is 'more than mere negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'" *Scinto*, 841 F.3d at 225 (alternation in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). A plaintiff may satisfy this standard by "prov[ing] by circumstantial evidence that a risk was so obvious that it had to have been known." *Makdessi v. Fields*, 789 F.3d 126, 136 (4th Cir. 2015). "[O]nce prison officials become aware of a problem with prison conditions, they cannot simply ignore the problem, but should take corrective action when warranted." *Williams v. Griffin*, 952 F.2d 820, 826 (4th Cir. 1991).

Since *Hill v. Nicodemus*, however, the United States Supreme Court has called into question whether the same standard applies to claims brought by pretrial detainees and post-

conviction inmates. In *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), the Court held that,

unlike the standard applied to post-conviction detainees' excessive force claims under the Eighth

Amendment, the standard for pretrial detainees' excessive force claims under the Fourteenth

Amendment includes no subjective component. *Id.* at 2472–73. In the wake of *Kingsley*, Circuit

Courts have split regarding whether pretrial detainees asserting deliberate indifference claims

under the Fourteenth Amendment likewise need only meet the objective standard. *See Mays v.

Sprinkle*, 992 F.3d 295, 300–01 & n.4 (4th Cir. 2021) (noting that the Second, Seventh, and

Ninth Circuits have adopted a completely objective standard for pretrial-detainee-medical-

deliberate-indifference claims while the "Fifth, Eighth, and Eleventh Circuits cabined *Kingsley*

to its facts—pretrial-detainee-excessive-force claims—and continue to require subjective

knowledge of the condition and risk for pretrial-detainee-deliberate-indifference claims"). The

Fourth Circuit has declined to resolve the issue. *See id.* Accordingly, other courts in this District

have found that they "remain[] bound by Fourth Circuit precedent to apply the traditional

deliberate indifference standard adopted in *Hill*." *Gattuso v. C.C.S. Med. Dep.*, No. CV TDC-18-

3470, 2020 WL 488954, at *4 (D. Md. Jan. 29, 2020); *see also Ajeo v. Dep't of Juv. Servs.*, No.

CV PWG-21-1145, 2021 WL 2936266, at *4 n.5 (D. Md. July 13, 2021). Here, because the

Court's conclusions do not turn on the allegations of the officials' subjective state of mind, and

thus the results will be the same regardless of the standard applied, the Court need not reach this

question. The Court will thus examine Plaintiff's allegations concerning his conditions of

confinement in turn.

### 1.  Sewage

Plaintiff alleges that he was confined in a cell with an inoperable toilet for five days after

toilets in surrounding cells overflowed, ECF No. 1 at 3, and that the sewage and mold problems

have continued since, *see* ECF No. 8 at 3; ECF No. 5 at 4. While a short period of exposure to such waste will not amount to a constitutional violation,[5] courts have found that exposure for a more substantial amount of time may be actionable.[6] Circuits have split on exposure lasting three or four days. *See Ortiz v. Dep't of Correction of City of New York*, No. 08 CIV. 2195 RJSHBP, 2011 WL 2638137, at *6–7 (S.D.N.Y. Apr. 29, 2011), *report and recommendation adopted sub nom. Ortiz v. Hernandez*, No. 08 CIV. 2195 RJSHBP, 2011 WL 2638140 (S.D.N.Y. July 5, 2011) (identifying split and listing cases). Here, where the alleged exposure lasted for five days and to a lesser degree for months after, Plaintiff has sufficiently stated that the conditions he was exposed to were serious, satisfying the objective prong. Additionally, because he alleges that the correctional officers were aware of the sewage situation but failed to address it properly and denied Plaintiff's requests for cleaning supplies, he has sufficiently alleged the subjective prong as well. Accordingly, Plaintiff has stated a Fourteenth Amendment claim based on his allegations of exposure to sewage.

In response, County Defendants submit an affidavit from Ryan McDowell, a BCDC Gang Intelligence Sergeant who reviewed video footage of the 3H housing unit during the time period at issue. ECF No. 17-9. McDowell states that the flooding was the result of intentional acts by inmates on April 14, 2020, although he does not state the basis for his knowledge of that fact, and there is no indication that he observed this himself. *Id.* ¶¶ 9–10. McDowell additionally

---

[5] *See, e.g., Prellwitz v. Anderson*, Civil No. 07–2120 (PAM/JSM), 2007 WL 2033804, at *2–3 (D. Minn. July 12, 2007) (granting motion to dismiss under 28 U.S.C. § 1915A(b) where waste water on cell floor lasted only three hours and odor of inoperable toilet lasted six hours); *Odom v. Keane*, 95 Civ. 9941(SS), 1997 WL 576088, at *5 (S.D.N.Y. Sept. 17, 1997) (condition where toilet failed to flush between 9 p.m. and 7 a.m. for several months "does not amount to cruel and unusual punishment").

[6] *See, e.g., Williams v. Adams*, 935 F.2d 960, 961–62 (8th Cir. 1991) (reversing grant of summary judgment for the defendants where the plaintiff alleged "that the toilet in the cell did not work" and overflowed continuously "and the floor stay[ed] filthy with its wast[e]" over 13-day period).

states that video footage shows correctional staff "appearing to unclog toilets and pipes," remove materials that had been used to clog them, and clean up water on the dayroom floor on April 15, 2020. *Id.* ¶¶ 10–11. However, McDowell also noted in an email attached to the affidavit that mop buckets did not enter the unit as scheduled during several shifts on April 14, April 15, and April 16, 2020. *Id.* at 6. With regard to April 16, McDowell further states, "no documentation was discovered supporting any reason for cleaning supplies not to be distributed." *Id.*

Plaintiff, in his Response, alleges that the material removed from the cells had been "used to block the bottom of doors so sewage . . . would not seep into cells," not to stop up the toilets. ECF No. 30 at 1–2. Plaintiff further states that no tickets were issued to inmates due to the alleged inmate-caused flooding. *Id.* at 2.

The evidence submitted by County Defendants is insufficient to warrant summary judgment at this stage. The Court notes in particular the fact that Defendants' own investigation shows that cleaning supplies did not enter the unit on several shifts during the time period in question. Because factual questions remain regarding whether the sewage and waste were promptly cleaned following the flooding event on April 14, 2020, and discovery has yet to begin, County Defendants' Motion is denied as to this claim.

### 2. Food

As a preliminary matter, Plaintiff's complaints regarding the provision of cold meals fail to state a claim. Inmates have "no constitutional right to be served a hot meal." *Garnica v. Washington Dep't of Corr.*, 965 F. Supp. 2d 1250, 1267 (W.D. Wash. 2013), *aff'd*, 639 F. App'x 484 (9th Cir. 2016); *see also Cortinas v. Baughman*, No. 2:19-CV-1712 KJN P, 2020 WL 3100205, at *2 (E.D. Cal. June 11, 2020), *report and recommendation adopted*, No. 219CV1712JAMKJNP, 2020 WL 5413045 (E.D. Cal. Sept. 9, 2020) (listing cases); *Drummond*

*v. Blackwell*, No. 515CV04713MGLKDW, 2017 WL 9288220, at *6 (D.S.C. May 22, 2017),
*report and recommendation adopted*, No. CV 5:15-04713-MGL, 2017 WL 2952971 (D.S.C. July
11, 2017).

However, Plaintiff sufficiently states a claim regarding his allegations of receiving
spoiled and rodent-infested food. ECF No. 1 at 3; ECF No. 5 at 3–4; ECF No. 6 at 2, 5.
"Occasional short-lived problems with food service and isolated instances of spoiled food or
foreign objects in the food do not state cognizable claims under the Eighth Amendment."
*Marshall v. Bazzle*, C/A No. 4:08-cv-2775-GRA, 2009 WL 2858999, at *6 (D.S.C. Aug. 27,
2009); *see also Allen v. Maryland*, Case No. L-10-353, 2010 WL 727753, at *1 (D. Md. Feb. 25,
2010) (explaining that although a prisoner found a burnt rodent in his breakfast, he failed to state
an Eighth Amendment claim because he did not allege that his food "regularly or even often
contains mice or other foreign objects"); *Miller v. Fogle*, Civil Action No. 613-1670-TMC, 2013
WL 4499479, *2 (D.S.C. Aug. 19, 2013) ("[O]ne-time or intermittent mishaps with respect to
food are not a constitutional violation."). However, liberally construing Plaintiff's Complaint, he
has adequately alleged that the provision of spoiled food is a regular and ongoing occurrence.
*See* ECF No. 5 at 4 (alleging "spoiled bread, milk, meat or molded food has caused . . .  sickness
to myself and others since April 2020"); ECF No. 6 at 5 ("[A]ll [of] these issues happened and
still do to my cell mate also along with at least my entire [tier] 3H[.]"). Accordingly, Plaintiff has
satisfied the objectively serious prong. Moreover, Plaintiff alleges that he has repeatedly brought
these issues to the attention of the correctional officers and has been ignored. *See* ECF No. 5 at 4
(alleging grievance filed with no response received); ECF No. 6 at 5 (describing grievances and
complaints filed). Plaintiff has thus likewise satisfied the subjective component of his claim.

County Defendants provide evidence that the food provided meets inmates' nutritional needs, ECF No. 17-6; ECF No. 17-8, but do not respond to the allegations concerning the food quality problems. Accordingly, County Defendants' Motion is denied as to the claim based on spoiled food.

### 3. Exercise

Plaintiff also alleges in the Complaint, filed July 8, 2020, that he has not been permitted his daily hour of exercise since April 14, 2020, causing him to gain 40 lbs. as well as to suffer from fatigue, breathing problems, and mental health issues. ECF No. 1 at 3. "An inmate's exercise is a basic human need protected by the constitution." *Rodriguez v. McCormick*, No. 3:20-CV-01019 (VLB), 2021 WL 83503, at *7 (D. Conn. Jan. 11, 2021) (citing *Wilson v. Seiter*, 501 U.S. 294, 304–05 (1991). "[I]n considering the totality of conditions pertinent to the right of exercise at a given institution," courts should consider "elements including the overall duration of incarceration, the length of time for which prisoners are locked in their cells each day, . . . and the practical opportunities for the institution to provide prisoners with increased exercise opportunities[.]" *Mitchell v. Rice*, 954 F.2d 187, 191 (4th Cir. 1992) (alteration in original) (quoting *Dawson v. Kendrick*, 527 F. Supp. 1252, 1300 (S.D. W.Va.1981)). While the Fourth Circuit has not stated a rule that denial of all out-of-cell exercise opportunities is per se unconstitutional, it has "indicated that generally a prisoner should be permitted some regular out-of-cell exercise." *Id.* Plaintiff's allegations of a total deprivation of exercise for nearly 3 months states a sufficiently serious deprivation, satisfying the objective prong. *Cf. Delaney v. DeTella*, 123 F. Supp. 2d 429, 440 (N.D. Ill. 2000), *order aff'd and remanded*, 256 F.3d 679 (7th Cir. 2001) ("In light of the clearly established law and the information possessed by the defendants, reasonable officials could not have believed that a six month denial of exercise, even during a

16

lockdown, was lawful."). Additionally, because the failure to allow Plaintiff exercise for several months and the associated risks would have been obvious to correctional officials, who record exercise on walk logs, the Court will infer from the Complaint that Plaintiff has satisfied the subjective component for this claim. *See Makdessi v. Fields*, 789 F.3d 126, 136 (4th Cir. 2015).

County Defendants respond that, due to a modified lockdown put in place in response to the COVID-19 pandemic, inmates' out-of-cell time was reduced, as inmates were allowed access to the dayroom only every other day to allow for greater social distancing. *See* ECF No. 17-5 at 2 (email from Administrative Captain Daniel Swain on April 13, 2020, outlining COVID-19 management steps). County Defendants also point to a log from April 15, 2020, through April 17, 2020, showing Plaintiff was provided an hour of exercise time on April 16, but not on April 15, or April 17, consistent with the every-other-day procedures in place during the modified lockdown. ECF No. 17-10. In his Response, Plaintiff maintains that he was not given walks but does not specifically address the evidence showing he was provided a walk on April 16, 2020. ECF No. 30 at 2. Because Plaintiff alleges that he was not allowed out-of-cell exercise from April 14, 2020, through July 2020, but County Defendants have provided evidence showing that he was provided a walk on April 16, 2020, that Plaintiff has not refuted, the Court grants County Defendants' motion as to this claim.

### 4. COVID-19 Precautions

Finally, Plaintiff alleges that correctional officers failed to follow adequate safety procedures with respect to COVID-19. He alleges that the staff have not practiced social distancing, have not worn masks or have lowered their masks when speaking to Plaintiff, do not replace their gloves after each use, and have denied his requests for face masks and COVID-19 testing. ECF No. 1 at 3; ECF No. 5 at 4. Plaintiff's claim is thus not that the facility did not have

adequate procedures in place, but rather that the officers did not put those procedures into practice.

"Courts have [] long recognized that prison officials have an Eighth Amendment duty to protect inmates from exposure to communicable diseases." *Maney v. Brown*, No. 6:20-CV-00570-SB, 2021 WL 354384, at *12 (D. Or. Feb. 2, 2021). COVID-19 "is a highly dangerous disease that poses a significant risk of severe illness and death[.]" *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 440 (D. Conn. 2020). Given the potential severity of a COVID-19 infection, the Court finds the risk posed to be sufficiently serious to satisfy the objective prong. *See Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (finding "the objective prong is easily satisfied" regarding the risk posed by COVID-19); *cf. Maney*, 2021 WL 354384, at *12 (finding receiving COVID-19 vaccine is a "serious medical need," satisfying the objective prong). Additionally, because Plaintiff alleges that Defendants failed to take reasonable precautions despite his complaints, and because the risks posed by COVID-19 were well known at the time,[7] the Court further finds Plaintiff has sufficiently alleged the subjective prong for his claim as well. Accordingly, at this stage, the Court finds Plaintiff has adequately alleged a conditions of confinement claim on the basis of the failure to enact adequate COVID-19 prevention procedures. *Cf. Martinez-Brooks*, 459 F. Supp. 3d at 418–24, 453 (finding, where the plaintiffs alleged, *inter alia*, that the prison staff failed to implement adequate screening and testing procedures and failed to provide staff and inmates with adequate personal protective equipment,

---

[7] "We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope v. Pelzer*, 536 U.S. 730, 738 (2002); *see also Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 441 (D. Conn. 2020) (finding "it would be implausible to suggest that prison officials are unaware of" the risk posed by COVID-19 given "pervasive daily media coverage" and the modification of operations at the facility in response to the pandemic).

soap, and sanitizers, the plaintiffs had plausibly alleged a violation of their Eighth Amendment rights).

County Defendants provide emails from Administrative Captain Daniel Swain that outline policies responsive to the COVID-19 pandemic—specifically, an email sent April 9, 2020, states that, effective immediately, all staff and inmate workers were required to use surgical masks, ECF No. 17-11, and an email sent April 13, 2020, states that a modified lockdown, in which inmate movement would be limited, would begin at midnight, ECF No. 17-5. However, County Defendants do not provide evidence disputing Plaintiff's allegations that, regardless of the procedures in place, correctional officials were not taking adequate precautions in practice. *Cf. Chatman v. Otani*, No. CV 21-00268 JAO-KJM, 2021 WL 2941990, at *18 (D. Haw. July 13, 2021) (finding strong likelihood that the plaintiffs would prevail on merits of Fourteenth Amendment claim where they alleged failure to implement or comply with COVID-19 protocols, including alleging that mask wearing was inconsistent with minimal enforcement, and noting "[p]olicies are meaningless if they are not followed"). Additionally, County Defendants do not provide any evidence regarding the provision of masks and testing to inmates. County Defendants' Motion will thus be denied at this stage.

### C. Inadequate Medical Care

Plaintiff alleges that he received inadequate medical care while detained at BCDC—specifically, he alleges (1) he was not provided tuberculosis tests, (2) he was improperly given his medicine in crushed-up form, (3) he was not given his medicine on April 14, 2020, on June 16, 2020, and on "several other afternoon[s]," (4) his fractured knee went undiagnosed for several months, and (5) rather than diagnose and treat his knee, officials moved him from a bottom bunk to a top bunk without a ladder. ECF No. 1 at 3; ECF No. 5 at 3, 5; ECF No. 15 at 3.

The same legal standards discussed above, applicable to conditions of confinement claims, also apply to claims of inadequate medical care under the Fourteenth Amendment. *See Seth v. McDonough*, 461 F. Supp. 3d 242, 259 (D. Md. 2020). Plaintiff thus must allege that Defendants acted with deliberate indifference to Plaintiff's serious medical needs. *See Hill v. Nicodemus*, 979 F.2d 987, 991–92 (4th Cir. 1992).

First, Defendants' alleged failure to provide tests and failure to diagnose an injury, without more, do not amount to constitutional violations. *See Gardner v. United States*, 184 F. Supp. 3d 175, 186–87 (D. Md. 2016) ("[C]ourts have repeatedly rejected Eighth Amendment claims stemming from allegations that medical practitioners failed to provide diagnostic tests— even in cases where such tests might have proved highly beneficial to the prisoner-plaintiffs or where failure to provide such tests may have constituted medical malpractice."). While Plaintiff alleges Defendants were negligent in their failure to diagnose and treat him, ECF No. 15 at 3, negligence is not sufficient to state a claim for inadequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

Additionally, where Plaintiff has not identified an injury caused by the provision of the medicine in a crushed-up form and appears to allege only a disagreement with the medical staff regarding his treatment, that claim fails. *See DeLeon v. Dexter*, No. EDCV-09-1803-VBF-JEM, 2011 WL 1334411, at *5 (C.D. Cal. Apr. 5, 2011), *report and recommendation adopted*, No. EDCV 09-1803-VBF JEM, 2011 WL 1325208 (C.D. Cal. Apr. 6, 2011) (dismissing claim where the plaintiff did not allege that negative side effects were caused by the *crushed* medicine rather than the medicine itself and further finding that a difference of opinion between the medical staff

20

and the inmate regarding medical care does not give rise to a section 1983 claim); *Schlosser v. Carter*, No. 3:20-CV-434 (SRU), 2021 WL 1124280, at *11 (D. Conn. Mar. 24, 2021) (dismissing claim where the plaintiff "does not allege that crushing the pills rendered them ineffective at treating his mental health or medical conditions or that he experienced any negative symptoms or side effects as a result of ingesting the Gabapentin in crushed form").

Next, occasional failures to provide prescribed medicine, without more, are also not actionable under the Fourteenth Amendment. *See Tamar D. Harvey v. Sergeant Hobbs*, No. 1:20CV605 (TSE/TCB), 2021 WL 3641462, at *5 (E.D. Va. Aug. 17, 2021) (finding that "missing a single dose, or several doses, of a needed medication" does not alone give rise to a claim for inadequate medical care). "When an inmate brings an Eighth Amendment deliberate indifference claim based on 'a temporary delay or interruption' of treatment, the court's objective 'serious medical need inquiry can take into account the severity of the temporary deprivation alleged by the prisoner.'" *Tillery v. Virginia Peninsula Reg'l Jail*, No. 1:20CV751 (RDA/TCB), 2020 WL 6742991, at *4 (E.D. Va. Nov. 17, 2020) (quoting *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003)). "In 'episodes of missed medication' an inmate must establish that the failure to administer the medication 'resulted in permanent or on-going harm to his health,' or 'explain[ ] why the absence of actual physical injury was not a relevant factor in assessing the severity of his medical need.'" *Id.* (quoting *Smith*, 316 F.3d at 188–89). Where, as here, Plaintiff alleges a small number of incidents in which his medicine was not provided, and that the missed doses caused him migraines or headaches,[8] ECF No. 5 at 5, he has not alleged a sufficiently serious deprivation. *See Evans v. Bonner*, 196 F. Supp. 2d 252, 256 (E.D.N.Y. 2002)

---

[8] Although severe chronic migraines may be found "sufficiently serious" to warrant constitutional protection, Plaintiff does not allege that the headaches were long-lasting or debilitating such that they rose to the requisite level of harm. *See Washington v. Monroe*, No. 16-CV-9090(NSR), 2019 WL 1130155, at *5–6 (S.D.N.Y. Mar. 12, 2019).

(finding "aches, pains and joint problems," if caused by delayed medication, would not be considered "sufficiently serious to rise to a constitutional level"); *see also Schlosser*, 2021 WL 1124280, at *9 (discussing claim where a missed dose of medicine caused only short-term withdrawal symptoms).

Moreover, even had Plaintiff alleged a constitutional violation regarding the missed doses, he has not shown Defendant PrimeCare should be held liable. "[A] private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (emphasis in original). Here, Plaintiff has not sufficiently alleged facts from which the Court may infer that the occasional failures to provide him medication were attributable to an official practice or policy on the part of Defendant PrimeCare and thus has not alleged PrimeCare should be held liable for any alleged violation.

Finally, Plaintiff has sufficiently alleged that his placement in a top bunk amounted to a constitutional violation. Plaintiff alleged that he complained of severe knee pain, and correctional officers intentionally moved him from a bottom bunk to a top bunk without a ladder in order to "inflict more pain." ECF No. 15 at 3. Based on those facts, Plaintiff has adequately alleged that the officers acted with deliberate indifference to the risk to his safety posed by placement on the top bunk. Still, as stated above, municipalities and local governments may only be sued under § 1983 where the alleged violation occurred pursuant to an official policy or custom. *See Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014) ("[U]nder *Monell*, a municipality is liable only for its *own* illegal acts. . . . Pursuant to this standard, a municipality is liable under § 1983 if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights." (emphasis in original) (citing *Monell v. Dep't of Soc. Servs.*, 436

22

U.S. 658, 694 (1978)). Because Plaintiff's allegations do not suggest that decision to move him to a top bunk was made pursuant to official policy or custom, Plaintiff cannot bring a § 1983 claim against Defendant Baltimore County.[9]

### D.  HIPAA Claims

Plaintiff also claims that PrimeCare staff violated HIPAA when they conducted medical visits in the BCDC housing units. ECF No. 1 at 4; ECF No. 5 at 3. HIPAA establishes standards and regulations to protect the privacy and accuracy of medical records, and it prohibits the wrongful disclosure of unique health identifiers or individually identifiable health information. 42 U.S.C. § 1320d-6 (2018). The statute does not, however, provide a private right of action for any citizen. *See, e.g.*, *Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019); *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016); *Tarpley v. Pierce*, No. GLR-17-3267, 2018 WL 4616058, at *10 (D. Md. Sept. 26, 2018). "Further, 'neither the U.S. Supreme Court nor the Fourth Circuit has ever recognized a constitutional right in the privacy of prisoners' medical records.'" *Tarpley*, 2018 WL 4616058, at *10 (quoting *Van Higgins v. Miller*, 2012 WL 4511524 at *2 (W.D.N.C. Oct. 1, 2012)). Therefore, Plaintiff's claims based on alleged HIPAA violations fail as a matter of law and must be dismissed.

### E.  Due Process

Finally, to the extent Plaintiff brings a due process claim based on the correctional staff's failure to provide administrative remedy procedure ("ARP") forms upon request and to respond to ARPs that were submitted, that claim fails. "[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." *Adams*

---

[9] Plaintiff's allegations do not suggest that Defendant PrimeCare was involved in the decision to move him to a top bunk, so this claim is understood to be alleged only against Defendant Baltimore County.

*v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Accordingly, "an inability to access the administrative remedy procedure based on an alleged refusal by prison officials to enforce the rules governing the process does not run afoul of the due process clause." *Allen v. W. Corr. Inst.*, No. CV ELH-15-3498, 2017 WL 3607821, at *25 (D. Md. Aug. 21, 2017); *Jones v. Solomon*, No. 1:18-CV-89-FDW, 2018 WL 6247265, at *12 (W.D.N.C. Nov. 29, 2018) ("Because Plaintiff has no federal constitutional right to engage in the prison grievance procedure, any alleged violation of that procedure cannot constitute a due process violation.").[10]

Additionally, to the extent Plaintiff alleges that he was denied access to the courts due to the correctional staff's failure to process his ARPs, his claim also fails. A critical requirement of an access to courts claim is that a prisoner must show "actual injury" to "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was frustrated or impeded because of the denial of access to the courts. *Lewis*, 518 U.S. at 352–53 & n.3. The complaint must therefore contain a sufficient description of the predicate claim to permit an assessment of whether it is "nonfrivolous" or "arguable." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Plaintiff has not identified any claim that was

---

[10] "While the longstanding rule has been that prisoners have no constitutional right to participate in an institutional grievance procedure," *Kitchen v. Peguese*, No. CIV A DKC-05-466, 2005 WL 4827386, at *3 (D. Md. Nov. 23, 2005), *aff'd*, 180 F. App'x 443 (4th Cir. 2006) (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)), in *Kitchen*, the court found that "with the passage of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), the issue is less clear," *id.* However, the court ultimately concluded, based on *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674 (4th Cir. 2005), that "an inability to access the administrative remedy procedure based on an alleged refusal by prison officials to enforce the rules governing the process likely does not run afoul of the due process clause." *Kitchen*, No. CIV A DKC-05-466, 2005 WL 4827386, at *3. Courts in this District have since found that the "longstanding rule" remains in effect, and that prison officials' denial of access to the administrative remedy process is instead relevant as an affirmative defense to exhaustion. *See, e.g.*, *Allen v. W. Corr. Inst.*, No. CV ELH-15-3498, 2017 WL 3607821, at *25 (D. Md. Aug. 21, 2017); *Resper v. Schurg*, No. PJM-13-1278, 2014 WL 3345131, at *3 (D. Md. July 7, 2014).

frustrated, nor does he describe any actual injury that resulted from the loss of such a claim. Therefore, any access to court claims Plaintiff intended to bring fails.

## IV.     CONCLUSION

For the foregoing reasons, County Defendants' Motion is granted, in part, and denied, in part, and PrimeCare's Motion is granted. Plaintiff's conditions of confinement claims against Defendant Baltimore County based on the sewage situation, the provision of spoiled food, and the failure to take adequate COVID-19 precautions survive. However, Plaintiff's conditions of confinement claim based on lack of exercise, inadequate medical care claims, due process claims, HIPAA claims, and claims against Defendant BCDC are dismissed. A separate Order follows.


Date: <u>August 30, 2021</u>                                      _/s/_____
                                                                                      GEORGE J. HAZEL
                                                                                      United States District Judge